NOT YET SCHEDULED FOR ORAL ARGUMENT

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN FUEL &
PETROCHEMICAL
MANUFACTURERS,

                Petitioner,

       v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY,

               Respondent.

Case No. 25-1184
(consolidated with
Case No. 25-1183)

**UNOPPOSED MOTION OF COALITION FOR RENEWABLE
NATURAL GAS FOR LEAVE TO INTERVENE
ON BEHALF OF RESPONDENT**

Under Federal Rules of Appellate Procedure 15(d) and 27 and D.C.

Circuit Rules 15(b) and 27, Coalition for Renewable Natural Gas ("RNG

COALITION") respectfully moves for leave to intervene in a challenge

brought by American Fuel & Petrochemical Manufacturers ("AFPM") to

final agency action by the U.S. Environmental Protection Agency ("EPA")

entitled "Renewable Fuel Standard (RFS) Program: Partial Waiver of the

2024 Cellulosic Biofuel Volume Requirement," 90 Fed. Reg. 29751 (July

7, 2025). In the challenged action, EPA, among other things, asserted "cellulosic waiver authority" to partially reduce the 2024 cellulosic biofuel volume requirement and, correspondingly, revise the associated percentage standard under the Renewable Fuel Standard program.[1] 90 Fed. Reg. at 29751.

RNG COALITION represents the renewable natural gas industry. Its members include developers, owners, and operators of renewable natural gas facilities and distributors of renewable natural gas that participate in the Renewable Fuel Standard program and generate Renewable Identification Numbers ("RINs") used by "obligated parties" (i.e., refiners and importers of petroleum-based fuels) to show compliance with the cellulosic biofuel volume requirements (referred to as "D3 RINs").[2] Renewable natural gas, in the form of compressed natural gas ("CNG") and liquified natural gas ("LNG"), has been used to meet virtually all of the cellulosic biofuel volume requirements under the Renewable Fuel Standard program. *See* 90 Fed. Reg. at 29753.

---

[1]    RNG COALITION has filed its own petition for review (No. 25-1183), which has been consolidated with AFPM's challenge (No. 25-1184).

[2]    Renewable natural gas from certain biogas feedstocks can also qualify as non-cellulosic advanced biofuel for generation of "D5" RINs.

Based on the comments submitted to EPA, AFPM seeks to reduce the 2024 cellulosic biofuel volume requirement even further than EPA's final rule, which will directly impact cellulosic biofuel producers, including members of RNG COALITION whose interests RNG COALITION seeks to protect. EPA has different interests in defending its action than does RNG COALITION and its members, so RNG COALITION should be permitted to intervene to defend against AFPM's challenge. This motion is timely, having been filed within 30 days of the docketing of AFPM's petition.

Counsel for RNG COALITION reached out to counsel for the parties in this case for their position on RNG COALITION's request to intervene with respect to AFPM's petition. AFPM does not oppose the motion. EPA takes no position on the motion.

A corporate disclosure statement pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 and a certificate of parties and *amici* pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A) are also attached to this motion.

I.    Interests of Intervenor.

The Renewable Fuel Standard, first established by the Energy Policy Act of 2005 and then expanded by the Energy Independence & Security Act of 2007, is codified in Section 211(o) of the Clean Air Act and requires a minimum volume of renewable fuel be sold or introduced into commerce in the United States each year. 42 U.S.C. §7545(o)(2). The purpose of the program is to promote the production of transportation fuels derived from renewable biomass, which provide numerous environmental, economic and energy security benefits. It is a market forcing policy, essentially setting the market for renewable fuels in the transportation sector, including cellulosic biofuels. *See Ams. for Clean Energy v. EPA*, 864 F.3d 691, 710 (D.C. Cir. 2017).

The statute specified annual required volumes through 2022 for cellulosic biofuel. 42 U.S.C. §7545(o)(2)(B)(i)(III). After 2022, EPA is required to set the annual volumes in coordination with the Departments of Energy and Agriculture, based on an analysis of factors outlined in the statute. *Id.* §7545(o)(2)(B)(ii) (referred to as the "Set" provision). In 2023, EPA set the volumes for cellulosic biofuel for compliance years 2023, 2024, and 2025. 88 Fed. Reg. 44468, 44470 (July 12, 2023). This Court

recently upheld those volumes as reasonable. *See Ctr. for Biological Diversity v. EPA*, 141 F.4th 153, 185-88 (D.C. Cir. 2025).

In December 2024, at the end of the compliance year, EPA proposed to use its "general waiver" authority under 42 U.S.C. §7545(o)(7)(A) to partially reduce the 2024 cellulosic biofuel volume requirement based on EPA's claim that there may be an "inadequate domestic supply" of cellulosic biofuels. 89 Fed. Reg. 100442, 100443, 100446 (Dec. 12, 2024). Under the proposal, EPA would reduce the 2024 volume from 1.09 billion ethanol-equivalent gallons to 0.88 billion to address a claimed "shortfall" in D3 RIN generation for that year, and to make up the volume obligation deficits that certain obligated parties had carried into 2024. *Id.* at 100443. RNG COALITION opposed EPA's proposal and argued that the proposed waiver exceeded EPA's statutory authority. *See* RNG COALITION Comments, Jan. 21, 2025, at 2-14 (EPA-HQ-OAR-2024-0411-0030) (Exhibit A).[3] AFPM, on the other hand, urged EPA to make even further reductions to the 2024 cellulosic biofuel volume requirement than what EPA proposed. *See* AFPM Comments, Jan. 21, 2025, at 2-3 (EPA-HQ-OAR-2024-0411-0047) (Exhibit B).

---

[3] Administrative record documents are available at www.regulations.gov.

On July 7, 2025, EPA issued a final rule partially waiving the 2024 cellulosic biofuel volume requirement, claiming to use its cellulosic waiver authority rather than its general waiver authority. 90 Fed. Reg. at 29752. EPA reduced the 1.09 billion requirement to 1.01 billion. *Id.* A decision in this litigation in favor of AFPM that seeks to reduce the 2024 cellulosic biofuel requirement even further would adversely affect the members of RNG COALITION that have invested in renewable natural gas and/or generate RINs under the Renewable Fuel Standard program, including, but not limited to, developers, owners and operators of renewable natural gas facilities, marketers, and distributors of CNG/LNG. The Court's determination could also set precedent, affecting how EPA evaluates or issues waiver requests in the future. As such, RNG COALITION has a substantial interest in the outcome of this case.

## II.     Reasons for Granting Intervention.

RNG COALITION should be permitted to intervene in this case because it and its members have a direct and significant interest in the outcome of this challenge, and RNG COALITION's members will be harmed if AFPM's efforts are successful. That interest will not be adequately represented in the absence of intervention. The motion to

intervene is timely, and granting intervention will not adversely affect any party or the timely resolution of the case.

This Court has previously permitted RNG COALITION to intervene in cases brought by AFPM that similarly sought to reduce the cellulosic biofuel volume requirements under the Renewable Fuel Standard program. *See* Order, *Ctr. for Biological Diversity v. EPA*, No. 23-1177 (D.C. Circ. Nov.16, 2023) (granting intervention on AFPM's challenge to 2023-2025 volume requirements); Order, *AFPM v. EPA*, No. 24-1163 (D.C. Cir. July 29, 2024) (granting intervention on AFPM's challenge to denial of waiver of 2023 cellulosic biofuel volume requirement).[4] RNG COALITION respectfully requests that this Court do the same here.

### A. RNG COALITION has a direct and substantial interest in the outcome of this case.

RNG COALITION has a substantial interest in this case because its members are subject to the regulations at issue and stand to be harmed if AFPM's challenge succeeds.

---

[4] These orders are attached as Exhibit C.

RNG COALITION's and its members' interests in this case are more than sufficient to support intervention. This Court has recognized that the interest requirement under Federal Rule of Civil Procedure 24(a) is met when the proposed intervenor has constitutional standing. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (recognizing that intervention is appropriate when the proposed intervenor has standing). The Renewable Fuel Standard program is aimed at increasing renewable fuel production, and renewable natural gas makes up the vast majority of the cellulosic biofuel category. This Court has consistently found the regulated industry has standing in challenges to the relevant rule. *See S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 895-96 (D.C. Cir. 2006). The standing of biofuel producers in actions related to EPA's implementation of the volume requirements is "self-evident." *Sierra Club v. EPA,* 292 F.3d 895, 899-900 (D.C. Cir. 2002). RNG COALITION meets Article III standing requirements because its members produce fuels eligible under the Renewable Fuel Standard program that is the subject of this litigation, and the individual participation of the members in the case is not required. *See AFPM v. EPA,* 3 F.4th 373, 379 (D.C. Cir. 2021); *Alon Ref.*

*Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 664-65 (D.C. Cir. 2019); *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1015-1016 (D.C. Cir. 2016).

In this challenge, AFPM presumably seeks to decrease the 2024 cellulosic biofuel volume requirement even further. If AFPM were successful, RNG COALITION's members would suffer financial harms because members produce and sell fuels eligible under the Renewable Fuel Standard that are used by obligated parties for compliance.[5] Reducing those requirements will reduce demand, disrupt investments made to meet the annual volume requirements, and create uncertainty and volatility in the market due to an oversupply of RINs. This reduces demand for new production and has cascading impacts in later years.

The financial harms to RNG COALITION members would be directly traceable to the reduced volume requirement. *See Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2135-38 (2025). Indeed, EPA has recognized that waivers of volume requirements are "injurious

---

[5] There is ample evidence in the record of harms to RNG COALITION members that would result from reductions in the cellulosic biofuel volume requirements. *See, e.g.,* EPA Public Hearing, Tr. at 36-39 (Testimony of Grant Zimmerman, AMP Americas), at 42-45 (Testimony of Andrew Craig, California Bioenergy), at 45-48 (Testimony of Eric McAfee, Aemetis Biogas); at 52-54 (Testimony of Bill Johnson, Vision RNG) (EPA-HQ-OAR-2024-0411-0055).

to the RFS program because it would be disruptive to program participants and could result in reduced future demand for cellulosic biofuel production." 89 Fed. Reg. 20961, 20962 (Mar. 26, 2024). EPA also recognized the impacts such waivers have on investments. *See* EPA, Denial of AFPM Petition for Partial Waiver of 2023 Cellulosic Biofuel Standard, at 7 (2024), https://www.epa.gov/system/files/documents/2024-03/afpm-part-waiver-denial-cellulosic-biofuel-stndrd-2024-03.pdf (EPA-HQ-OAR-2024-0411-0005); EPA, Denial of AFPM Petition for Waiver of 2016 Cellulosic Biofuel Standard, at 3-4 (2017), https://www.epa.gov/sites/default/files/2017-01/documents/afpm-rfs-petition-decision-ltr-2017-01-17.pdf (EPA-HQ-OAR-2024-0411-0006).

Beyond these direct harms, RNG COALITION's members would also suffer competitive harms if AFPM's challenge succeeds. Obligated parties are competitors of biofuels in the transportation sector. Further easing the Renewable Fuel Standard volume requirements would benefit the competitors of RNG COALITION's members. *See Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 177 (D.D.C. 2008) ("The [Supreme] Court routinely recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy

the [Article III 'injury-in-fact' requirement].") (quoting 3 Richard Pierce, Administrative Law Treatise §16.4 at 1122 (4th ed. 2002)) (alterations in original); *see also Clinton v. City of N.Y.*, 524 U.S. 417, 432-33 (1998) (finding regulatory impact on business decisions raises "sufficient likelihood of economic injury to establish standing under [Supreme Court] precedents") (citations omitted).

Moreover, this Court's ruling could set precedent on how EPA utilizes its waiver authorities in future years. Thus, the ability of RNG COALITION to protect the interests of its members will be impaired if it is not able to participate in this litigation.

## B. The interests of RNG COALITION are not adequately represented by any of the existing parties.

Intervention is appropriate and necessary to adequately protect RNG COALITION's interests and the interests of its members. The burden of showing inadequate representation "is not onerous," and an "applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (other citations omitted). Where AFPM seeks to reduce the volume

requirements RNG COALITION urged to be higher, AFPM and RNG COALITION have divergent interests regarding EPA's implementation of the Renewable Fuel Standard volume requirements. EPA's interests also differ from RNG COALITION, and EPA and RNG COALITION are likely to take different positions on EPA's waiver authority.

This Court has long looked "skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citing *Fund for Animals*, 322 F.3d at 736 and *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977)). EPA is the agency responsible for implementing and administering the Renewable Fuel Standard. Accordingly, EPA is not able to represent adequately RNG COALITION's member companies' interests. *See Dimond*, 792 F.2d at 192-93 ("A government entity ... is charged by law with representing the public interest of its citizens. ... The District [of Columbia] would be shirking its duty were it to advance th[e] narrower interest [of a business concern] at the expense of its representation of the general public interest") (citations omitted); *see also Natural Res. Def. Council*, 561 F.2d at 912 (finding EPA did not adequately represent proposed intervenors'

interests that were narrower and more focused where EPA was "concerned primarily with the regulation that affects *their* industries").

Moreover, RNG COALITION provides a different perspective than EPA on the need for robust volume requirements. And RNG COALITION likely has different positions than EPA on the issues raised in this litigation. RNG COALITION opposed EPA's proposal to use its general waiver authority to reduce the cellulosic biofuel volume requirement, and it is presently challenging EPA's ultimate decision to use its cellulosic waiver authority. Thus, RNG COALITION can more than meet its burden to show that the existing parties do not adequately represent its interests or that of its members.

## C. The requested intervention would be timely and consistent with the orderly resolution of the case.

The current motion is being filed within 30 days of the filing of AFPM's petition for review and, therefore, is timely.[6] Moreover, this case is in its early stages, and no schedule for the filing of briefs has been issued to date. Granting RNG COALITION intervention will not delay the proceedings in this Court and will not cause undue prejudice to any

---

[6] EPA has requested that the deadline for procedural motions in this case be held in abeyance (Doc. # 2138124).

party. On the other hand, if intervention is not granted, RNG COALITION's ability to defend the interests of its members in this proceeding will be severely prejudiced.

WHEREFORE, Coalition for Renewable Natural Gas respectfully requests that the Court enter an order granting leave to intervene in support of Respondent.

Dated:  October 6, 2025                    Respectfully submitted,


                                           /s/ Sandra P. Franco
                                           Jonathan Y. Ellis
                                           Grace Greene Simmons
                                           MᴄGᴜɪʀᴇ Wᴏᴏᴅѕ LLP
                                           888 16th St. N.W.
                                           Suite 500
                                           Washington, D.C. 20006
                                           (202) 828-2887
                                           *jellis@mcguirewoods.com*
                                           *gsimmons@mcguirewoods.com*

                                           Sandra P. Franco
                                           Fʀᴀɴᴄᴏ Eɴᴠɪʀᴏɴᴍᴇɴᴛᴀʟ Lᴀᴡ, LLC
                                           600 Pennsylvania Avenue, SE,
                                           Unit 15577
                                           Washington, DC 20003
                                           (202) 256-6115
                                           *sandra@francoenvironmentallaw.com*

                                           *Counsel for Coalition for Renewable*
                                           *Natural Gas*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that:

1)      This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2389 words, excluding the exempted portions.

2)      This motion complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5-6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century font.

/s/ Sandra P. Franco
Sandra P. Franco

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN FUEL &
PETROCHEMICAL
MANUFACTURERS,

                    Petitioner,

          v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY,

                    Respondent.

Case No. 25-1184
(consolidated with
Case No. 25-1183)

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Coalition for Renewable Natural Gas ("RNG COALITION") makes the following disclosure:

RNG COALITION has no parent companies, and no publicly held company has a 10% or greater ownership interest. It has not issued shares or debt securities to the public.

RNG COALITION is a non-profit association of companies and organizations dedicated to the advancement of renewable natural gas as a clean, green, alternative, and domestic energy and fuel resource. It

1

advocates on behalf of its members and provides education for the public in support of the sustainable development, deployment, and utilization of renewable natural gas, including participating in regulatory proceedings and litigation involving implementation of the Renewable Fuel Standard program by EPA, as well as other regulatory actions that may impact the renewable natural gas industry. RNG COALITION's membership includes companies throughout the value chain of waste feedstock conversion to transportation fuel under the Renewable Fuel Standard program. It is a "trade association" as defined in Circuit Rule 26.1(b).

Dated: October 6, 2025          Respectfully submitted,

                                /s/ Sandra P. Franco
                                Jonathan Y. Ellis
                                Grace Greene Simmons
                                MCGUIRE WOODS LLP
                                888 16th St. N.W.
                                Suite 500
                                Washington, D.C. 20006
                                (202) 828-2887
                                *jellis@mcguirewoods.com*
                                *gsimmons@mcguirewoods.com*

Sandra P. Franco
FRANCO ENVIRONMENTAL LAW, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
(202) 256-6115
*sandra@francoenvironmentallaw.com*

*Counsel for Coalition for Renewable
Natural Gas*

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, <br><br> Petitioner, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, <br><br> Respondent. | Case No. 25-1184 (consolidated with Case No. 25-1183) |

## CERTIFICATE AS TO PARTIES

As required by D.C. Circuit Rule 27(a)(4) and pursuant to D.C. Circuit Rule 28(a)(1)(A), the following Certificate as to Parties and Amici is made on behalf of Coalition for Renewable Natural Gas.

This is a matter on petition for review of an agency action undertaken by the U.S. Environmental Protection Agency entitled "Renewable Fuel Standard (RFS) Program: Partial Waiver of the 2024 Cellulosic Biofuel Volume Requirement," published at 90 Fed. Reg. 29751 (July 7, 2025). There was no action in the district court, and so there were no parties in the district court.

As of the time of filing, the parties are as follows.

<u>Petitioners:</u>

Coalition for Renewable Natural Gas, No. 25-1183

American Fuel & Petrochemical Manufacturers, No. 25-1184

<u>Respondent:</u>  U.S. Environmental Protection Agency

Coalition for Renewable Natural Gas is not aware that any parties have been granted intervention or participation as *amicus curiae* at this time.

Dated:  October 6, 2025          Respectfully submitted,


/s/ Sandra P. Franco
Jonathan Y. Ellis
Grace Greene Simmons
MCGUIRE WOODS LLP
888 16th St. N.W.
Suite 500
Washington, D.C. 20006
(202) 828-2887
*jellis@mcguirewoods.com*
*gsimmons@mcguirewoods.com*

Sandra P. Franco
FRANCO ENVIRONMENTAL LAW, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
(202) 256-6115
*sandra@francoenvironmentallaw.com*

*Counsel for Coalition for Renewable Natural Gas*

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN FUEL &
PETROCHEMICAL
MANUFACTURERS,

     Petitioner,

   v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY,

     Respondent.

Case No. 25-1184
(consolidated with
Case No. 25-1183)

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2025, I caused the Unopposed Motion of Coalition for Renewable Natural Gas for Leave to Intervene on Behalf of Respondent and accompanying papers to be electronically filed with the Clerk of the U.S. Court of Appeals for the D.C. Circuit by using the Court's appellate CM/ECF system and that service will be accomplished by the appellate CM/ECF system.

/s/ Sandra P. Franco
Sandra P. Franco